UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————————

NICHOLAS ALLEN,                    |    Case No. 1:07-cv-530

        Plaintiff,                 |    HONORABLE PAUL MALONEY

            v.                     |

CITY OF STURGIS,                   |

        Defendant.                 |

———————————————————————

## Opinion and Order
### Granting the City's Summary-Judgment Motion as to the FMLA Claim;
### Declining Supplemental Jurisdiction over the State-Law Claim

This is an action by former police officer Nicholas Allen ("Allen") under the Family Medical

Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, as amended.  Defendant City of Sturgis,

Michigan ("the City") moved for summary judgment, Allen filed an opposition brief, and the City

filed a reply brief.  The court determined that oral argument was not necessary.  For the reasons that

follow, the court will grant the City's motion on the FMLA claim and leave Allen's state-law claim

for resolution by the courts of Michigan.


## BACKGROUND

Allen graduated from the Kalamazoo Valley Community College police academy and

became a certified police officer in the State of Michigan in spring 2003; on April 28, 2003, Allen

became a full-time police officer with the City, a municipal corporation which was Allen's employer

and a public agency subject to the FMLA.  Comp. ¶¶ 5-8; Ans. ¶¶ 5 & 8; City's Opening Brief in

Support of Motion for Summary Judgment ("City Br."), Ex. A (Deposition of Nicholas Allen ("Allen Dep")) at 5-6.  Allen's consumption of alcohol during his employment with the City "cause[d] him to be involved in some incidents outside of work that were brought to the attention of the City".  Comp. ¶ 9.  Allen characterizes himself as an alcoholic and contends that alcoholism is a disability for purposes of the FMLA.  Comp. ¶ 9.

On August 21, 2004, Allen drove a motor vehicle while intoxicated with alcohol, and crashed the vehicle.  *See* Allen Dep at 15-16.  The record does not reveal whether Allen caused damage to any other person's property or injury to any other person.  As a result of the drunk-driving crash, the City suspended Allen for ten days without pay for violating the Police Department's "General Orders."  *See* Allen Dep at 25-26.  Allen has acknowledged that his misconduct related to the crash, in his opinion, constituted just cause for immediate termination.  *See* Allen Dep at 28.

Also as a result of the drunk-driving crash, in September 2004, Allen signed a "Last Chance Agreement" with the City, *see* City Br. Ex. B, wherein he agreed to complete an in-house substance-abuse treatment program; refrain from drinking alcohol for one year; submit to breath, blood and urine testing for one year; and refrain from any misconduct for a two-year "probation" period.  Comp. ¶ 10; Ans. ¶ 10; Allen Dep at 23-24.  Allen has acknowledged that when he signed the Last Chance Agreement, the City told him that if his off-duty consumption of alcohol brought discredit to the police department, he could be terminated.  Allen Dep at 27.

Allen's complaint alleges that he successfully completed the intensive outpatient substance-abuse treatment program and made it through the two-year "probation period" without incident, Comp. ¶ 11, but the City disagrees, *see* Ans. ¶ 11.  Indeed, Allen's opposition brief first states that he complied with the Agreement's one-year prohibition on alcohol consumption, then states *in the*

*next paragraph* that he in fact violated that prohibition:

> As a result of the August 2004 accident, the Plaintiff signed a Last Chance Agreement that clearly stated that he could be terminated if he violated any terms of the agreement *and that included not consuming alcohol for one year.* Plaintiff successfully completed all of the requirements of the Last Chance Agreement without problem.
>
> *In June 2005*, Plaintiff met with Chief David Northrop and Deputy Chief David Ives to discuss the Last Change agreement, he was asked if he had consumed any alcohol during the previous year and Plaintiff admitted that he had on two or three occasions. *The Plaintiff* was honest with his superiors and didn't want to lie to the officers so he *admitted that he had some drinks at home during the period of the Last Change Agreement*. He admitted it was wrong and appreciated that the Defendants could have fired him for his admissions.

Allen's Opp'n at 5-6 (emphasis added). Allen also acknowledged at deposition that about one year into the Last Chance Agreement, in early August 2005, he violated the Agreement by consuming alcohol. Allen Dep at 30. Allen acknowledges that the City could have terminated him for that violation of the Agreement but did not. Allen Dep at 30-31.

On August 4, 2005, Chief Northrop and Deputy Chief Ives met with Allen, emphasized the importance of not drinking, and gave Allen another chance to comply with the Agreement and keep his job as a police officer. Allen Dep at 31-32.

On September 10, 2006, eight days after the expiration of the Agreement's two-year period, Allen drank alcohol at his home in Three Rivers, Michigan, and became very intoxicated. Allen had a guest who started having difficulty breathing – apparently, it was later discovered, because of post-traumatic stress disorder. Allen called 911 and was "admittedly loud and belligerent to the dispatchers and later the Three Rivers Police Officers who showed up for the emergency." Comp. ¶ 12; Ans. ¶ 12; Allen Dep at 33-34. Allen explains that he "overreacted due to his concern for his friend", Opp'n at 6, and he "[l]ater . . . wrote letters of apology to all involved . . . ." Comp. ¶ 12.

-3-

Allen has acknowledged the accuracy of the reports submitted in connection with that incident by Three Rivers Police Officers Andrew Howes and Karl Huhnke.  *See* Allen Dep at 34-35 and City Br. Exs C & D (reports of Officers Howes & Huhnke).

On September 11, 2006, Allen and his union representative, Greg Peterson, attended a pre-determination hearing with Deputy Chief Ives.  Allen Dep at 36.  Deputy Chief Ives informed Allen that he was investigating the previous day's incident, and Allen acknowledged that he was aware of General Order 4:4 (prohibiting conduct unbecoming a police officer) and General Order 4:17 (prohibiting the off-duty consumption of alcohol to a degree that discredits the police department).  Allen Dep at 37-38.  The City placed Allen on 14 days of unpaid administrative leave on September 13, 2006.  Allen Dep at 40.

On September 14, 2006, Allen faxed a letter to Chief Northrop requesting FMLA leave.  Allen Dep 64-66.  The letter stated, in its entirety:

> This is a letter informing you I'm currently in Turning Point Programs for substance abuse treatment for alcoholism, located in Grand Rapids, MI.  I am requesting as of 09/13/06, the date I was admitted, to be placed on the FMLA in reference to this.  I am requesting sick/vacation/credit days and/or comp days to be used as I am completing this treatment program.  The length of stay is undetermined at this time.  I will try to keep in contact with the department and family members in reference to my progress in the treatment program.

MSJ Ex F or Opp'n Ex 2.  On September 16, 2006, Deputy Chief Ives faxed a response to Allen in care of the Salvation Army's Turning Points Program in Grand Rapids, Michigan, stating,

> We are in receipt of your request for a FMLA (Family Medical Leave Act).  I have attached the necessary forms that are required to be completed for application under FMLA.  Your dad also requested copies and I have e-mailed them to him as well.
>
> I met with Director Northrop briefly this morning and we checked on the amount of sick and vacation time you have available.  Currently we show you have 290 of vacation time and 183.25 hours of sick time remaining.  Under the FMLA we would allow you to use these hours during the time you [are on] administrative leave.

-4-

> Please complete the forms attached and return them to me immediately so I can get them to Human Resources.
>
> Best of luck with your treatment program.

MSJ Ex G or Opp'n Ex 3.  Two days later, on September 20, 2006, Chief Northrop mailed a letter

to Allen's home, stating in its entirety:

> This letter is to inform you that, per your request, we will be utilizing your comp time, sick time, credit time and vacation (in that order) to cover your time off.  Your checks will be forwarded to your home unless you specify otherwise.
>
> In regards to your continued employment, that decision will be deferred until completion of your rehabilitation or November 1st, 2006.

MSJ Ex H or Opp'n Ex 4.

From September 14 through 26, 2006, Allen voluntarily attended the aforementioned

Salvation Army in-house alcoholism treatment program in Grand Rapids.  Comp. ¶ 13; Ans. ¶ 13.

Allen returned home on September 27, 2006 and called his superiors to update them, and they asked

him to attend a meeting the following day, which he agreed to do.

On September 28, 2006, a day or two after Allen was released from the Salvation Army

alcoholism program – and, according to Allen, while he was still on FMLA leave – he and his union

representative attended a disciplinary meeting with Deputy Chief Ives and Human Resources

Director Frank Perez, where he was given an opportunity to review the investigation report.  Comp.

¶ 14; Allen Dep at 41-42.  At the meeting, Deputy Chief Ives told Allen that he had recommended

Allen's discharge for violation of General Orders 4:4 and 4:17.  Allen Dep at 43.  At deposition,

Allen conceded that his conduct on September 10, 2006 violated General Orders 4:4 and 4:17, and

he agreed that customarily such misconduct would have justified his termination; however, he

expressed his belief that because he had called 911 in order to help someone (his ailing house-guest),

termination was too harsh a sanction.  Allen Dep at 44-45 and 48-50.  Allen was given the opportunity to resign at the meeting, but he refused.  Allen Dep at 62; Affidavit of City of Sturgis Deputy Police Chief David J. Ives dated March 6, 2008 ("Ives Aff") ¶ 12.

The next day, September 29, 2006, Allen met again with Deputy Chief Ives and was again offered the opportunity to resign rather than be terminated.  Allen again refused to resign, and the City terminated him.  Comp. ¶ 15; Allen Dep at 63-64; Ives Aff ¶¶ 13-14.  While Allen was turning in his badge and equipment, Deputy Ives allegedly remarked to him, "we were just being courteous, we could have fired you while you were on FMLA."  Opp'n Ex 1 at 70-71.

Allen contends that the City placed him on administrative leave because it viewed him as unable to perform any job for the City, and that the City terminated him in retaliation for his exercise of FMLA rights, Comp. ¶¶ 15 and 23, but the City denies both allegations, Ans. ¶ 15.  By way of affidavit, Chief Northrop states that the sole reason for the termination was Allen's conduct on September 10, 2006 and his disciplinary record, not his requesting or taking FMLA leave or his status as an alcoholic.  MSJ Ex I ¶¶ 6-9.  Chief Northrop insists that he would have terminated any officer who had Allen's record of misconduct and discipline, without regard to whether the officer was an alcoholic.  MSJ Ex I ¶ 10.

## Legal Standard:  Summary Judgment

Summary judgment is proper if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Boatright Enters.*, – F. Supp.2d –, –, 2008 WL 828112, *13 (W.D. Mich. Mar.

25, 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, – F. App'x –, –, 2008 WL 227331, *5 (6th Cir. 2008) (quoting FED. R. CIV. P. 56(c))).

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 2008 WL 227331 at *3 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, the movant "need not support its motion with affidavits or other materials 'negating' the opponent's claim"; rather, the movant's initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . ." *Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. Nov. 2, 2000).

Once the movant has met its burden, the non-movant must present "significant probative evidence" to demonstrate that there is more than "some metaphysical doubt as to the material facts." *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 2008 WL 227331 at *3 (quoting *Moore*, 8 F.3d at 339-40)). The non-movant may not rest on the mere allegations of his pleadings. *Wilson*, 112 F. Supp.2d at 654 (citing FED. R. CIV. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)). Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there must be some genuine issue of *material* fact. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 2008 WL 227331 at *3 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *cert. denied*, 128 S.Ct. 1334, – U.S. – (2008), and view the evidence in the light most favorable to

the non-movant, giving it the benefit of all reasonable inferences.  *Fox v. Eagle Dist. Co., Inc.*, 510

F.3d 587, 592 (6th Cir. 2007) (Griffin, J.).

Ultimately, "summary judgment is appropriate 'against a party who fails to make a showing

sufficient to establish the existence of an element to that party's case, and on which that party

w[ould] bear the burden of proof at trial.'"  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing

*Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at

322)).[1]  A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior

precedent, the use of summary judgment is not only permitted but encouraged in certain

circumstances . . . ."  *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988).

As Chief Judge Bell has characterized the post-trilogy summary-judgment standard, "[w]hile

preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are

now vigilant to weed out fanciful, malicious, and unsupported claims before trial."  *Wilson*, 112 F.

Supp.2d at 654.


### Discussion:  Count 1, The Family and Medical Leave Act

The federal Family and Medical Leave Act ("FMLA") entitles qualifying employees to take

---

[1]

*Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims.");

*Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. Feb. 6, 1991) ("This trilogy of cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992);

up to twelve weeks of unpaid leave,[2] without fear of termination or demotion, when the leave is taken for, inter alia, "'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see also* 29 C.F.R. § 825.100(a) and § 825.112(a)(4). A serious health condition is defined as "'an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'"  *Wysong*, 503 F.3d at 446 (quoting 29 U.S.C. § 2611(11)).  The regulations make clear that "FMLA leave is available for treatment for substance abuse provided" that the employee was referred to the substance abuse treatment by a "health care provider."  29 C.F.R. § 825.112(g) and § 825.114; *see also* 29 C.F.R. § 825.118 (definition of healthcare provider).

Qualifying employees who return to work within the twelve-week period of unpaid medical leave are entitled to be restored to "'the position of employment held by the employee when the

---

[2]

Although FMLA leave is often unpaid leave, the City did not violate the statute by requiring or encouraging Allen to use his accrued paid vacation and sick leave instead of being unpaid during his FMLA leave.  The regulations provide that,

(a)   Generally, FMLA leave is unpaid.  However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave.  If an employee does not choose to substitute paid accrued leave, the employer may require the employee to substitute accrued paid leave for FMLA leave.

* * *

(c)   Substitution of paid accrued vacation, personal, or medical/sick leave may be made for any (otherwise) unpaid FMLA leave needed to care for a family member or the employee's own serious health condition.  Substitution of paid sick/medical leave may be elected to the extent the circumstances meet the employer's usual requirements for the use of sick/medical leave. * * *

29 C.F.R. § 825.207(a) and (c).

leave commenced'" or to "'an equivalent employment position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Grace v. USCAR*, – F.3d –, –, 2008 WL 782470, *10 (6th Cir. 2008) (quoting 29 U.S.C. § 2614(a)(1)); *accord* 29 C.F.R. § 825.100(c) ("An employee generally has a right to return to the same position or an equivalent position with equivalent pay, benefits and working conditions at the conclusion of the leave.  The taking of FMLA leave cannot result in the loss of any benefit that accrued prior to the start of the leave.") and 29 C.F.R. § 825.214(a).  *See also* 29 C.F.R. § 825.215(a) and (c)-(e) for definition of equivalent position, pay, benefits, and terms and conditions of employment.

There are three theories of recovery under the FMLA, two of which apply here:  the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2).[3]  In our system of notice pleading, "a complaint need only provide 'the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Wysong*, 503 F.3d at 446 (quoting *Erickson v. Pardus*, – U.S. –, –, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombley*, – U.S. –, –, 127 S.Ct. 1955, 1959 (2007)) and citing FED. R. CIV. P. 8(a)

---

[3]The remainder of this section makes it unlawful for any person to discharge or otherwise discriminate against someone because he

(1)   has filed any charge, or has instituted or caused to be instituted, any proceeding, under or related to this subchapter;

(2)   has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3)   has testified, or is about testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615(b).

-10-

(requiring only "a short and plain statement of the claim" at the complaint stage)).  Moreover, a claim that an employer terminated an employee in retaliation for taking FMLA leave is cognizable under both the interference and retaliation theories.  *See Wysong*, 503 F.3d at 447 and n.2 (the interference "prohibition includes retaliatory discharge for taking leave" and "in this circuit, retaliatory discharge is also cognizable under the retaliation theory").

Accordingly, the court construes Allen's complaint as attempting to state a claim under both the interference and retaliation provisions of the FMLA.  *See Wysong*, 503 F.3d at 446 ("Although we analyze an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action.").

The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a)(1).  To prevail under the interference theory, an employee must establish the following: first, he is an eligible employee as defined by 29 U.S.C. §§ 2611(2); second, the employer is an eligible employer as defined by 29 U.S.C. §§ 2611(4); third, the employee was entitled to leave under the FMLA, 29 U.S.C. §§ 2612(a)(1); fourth, the employee gave the employer notice of his intention to take FMLA leave, 29 U.S.C. §§ 2612(e)(1); and fifth, the employer denied the employee FMLA benefits to which he was entitled.  *Wysong*, 503 F.3d at 447 (citing *Cavin v. Honda Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).

On the fifth interference element, whether the employee was denied FMLA benefits to which he was entitled, a federal regulation provides that "'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions'",

*Wysong*, 503 F.3d at 447 (quoting 29 C.F.R. § 825.220(c)).  This "negative factor" standard informs

a court's analysis of the last element of an interference claim.  *Wysong* 503 F.3d at 447 (citing

*Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) and *Pharakhone v. Nissan*

*No. America, Inc.*, 324 F.3d 405, 408 (6th Cir. 2003)).  Our Circuit recently rephrased the fifth

element of a FMLA interference claim as follows:

> If an employer takes an employment action based, in whole or in part, on the fact that
> the employee took FMLA-protected leave, the employer has denied the employee a
> benefit to which he is entitled.  We, therefore, have no objection to rephrasing the
> fifth element of an interference claim as being that the employer has "somehow used
> the leave against [the employee] and in an unlawful manner, as provided in either the
> statute or the regulations.

*Wysong*, 503 F.3d at 447 (S.D. Ohio citation omitted).  To escape liability, the employer must have

made the adverse decision *not even partially* based on the employee's taking FMLA leave.  *Wysong*,

503 F.3d at 448 (quoting *Cavin*, 346 F.3d at 726 ("a termination based only in part on an absence

covered by the FMLA, even in combination with other absences, may still violate the FMLA")).

To prevail under a retaliation theory, the employee must show that the employer discharged

or otherwise discriminated against him for exercising FMLA rights or opposing any practice made

unlawful by the FMLA.  *Arban v. West Pub. Corp.*, 345 F.3d 390, 400-401 (6th Cir. 2003).

Allen's allegations could fit the interference clause, on the theory that the City "denied [him]

FMLA benefits to which he was entitled" by terminating him rather than allowing him to continue

on the FMLA leave which the City had approved and promised to allow.  Allen's allegations could

also fit the retaliation clause, on the theory that the City terminated him to punish him for requesting

and/or taking FMLA leave.  The employee must establish the elements of interference or retaliation

by a preponderance of the evidence.  *Wysong*, 503 F.3d at 447 (citing *Sorrell v. Rinker Materials*

*Corp.*, 395 F.3d 332, 335 (6th Cir. 2005)).  On this record, interpreting the evidence in light most

favorable to Plaintiff, Allen cannot show a genuine issue as to whether he could carry this burden of proof at trial under either an interference or retaliation theory.

In order to qualify as an eligible employee, an individual must have worked for at least twelve months – and for at least 1,250 hours during the previous 12-month period – for a covered employer. *Grace v. USCAR*, – F.3d –, –, 2008 WL 782470, *10 (6th Cir. 2008) (quoting 29 U.S.C. § 2611(2)); *see also* 29 C.F.R. § 825.110(a).  The parties agree that Allen was a FMLA-eligible employee, Comp. ¶¶ 20-21 and Ans. ¶¶ 20-21.

A covered employer, in turn, is "'any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees [within 75 miles of the jobsite] for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.'" *Grace*, – F.3d at –, 2008 WL 782470 at *3; *see also* 29 C.F.R. § 825.104(a) and 825.105(e) (the 20 weeks need not be consecutive).  The City's answer refuses to admit that it was a FMLA covered employer, *contrast* Comp. ¶ 22 with Ans. ¶ 22, but it concedes that it is subject to the FMLA as a municipal government entity.  *See* 29 C.F.R. § 825.104(a) ("Employers covered by FMLA also include . . . any public agency.  Public agencies are covered employers without regard to the number of employees employed."); 29 C.F.R. § 825.108(a) (adopting the FLSA's definition of public agency as "the government of the United States; the government of a State or political subdivision of a State; or an agency of the United States, a State, or *a political subdivision of a State*.") (emphasis added).

It is also undisputed that Allen was entitled to take FMLA leave and that he gave the City notice of his intention to take such leave.[4]  *See* City's Br. at 11 ("Only the last of the five issues is

---

[4]

Employees are generally required

in contention in this case.").  Thus, the only criterion in contention is the fifth element of an interference or retaliation claim – whether the City's termination denied Allen FMLA leave to which he was entitled or punished him for exercising his right to take FMLA leave.  Allen fails to provide evidence that would permit a reasonable factfinder to find that his FMLA leave formed even part of the basis for the City's decision to terminate him after his latest incident of misconduct.  As our Circuit has explained,

> Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.  *See Arban*, 345 F.3d at 401 ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); *accord Throneberry* [*v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005)] ("As long as an employer can show a lawful reason, i.e., a reason unrelated to an Employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to [his] position, the employer will be justified to interfere with an employee's FMLA leave rights.").

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

On this record, the court concurs with the City that Allen has not made out a prima facie case that the City terminated him at least in part to punish him for taking FMLA leave.  In any event,

―――――――――――――――

> to provide the employer 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable . . . based on planned medical treatment for a serious health condition of the employee . . . .  If 30 days' notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.

29 C.F.R. § 825.302(a).  The City has not contended that Allen failed to give notice "as soon as practicable" under the circumstances.  *See* 29 C.F.R. §§ 825.302(b) and 825.303 (defining "as soon as practicable"); 29 C.F.R. §§ 825.304 and 825.312(a) (describing what the employer is allowed to do if the employee fails to give notice as soon as practicable).

even assuming *arguendo* that Allen made out a prima facie case, the court determines that Allen has

not shown a genuine issue as to whether the City's stated reason for terminating him was a pretext

for unlawful FMLA interference or retaliation.

After the City proffered a lawful reason for terminating Allen, the burden shifted to Allen

to show by a preponderance of the evidence that the City's proffered reasons for the termination

"either (1) had no basis in fact, (2) did not actually motivate his [termination], or (3) were

insufficient to motivate his [termination]." *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112,

120-21 (6th Cir. 2007) (Griffin, J.) (citing, *inter alia*, *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 728

(6th Cir. 2007) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir.

1994))).  Allen cannot merely rely on the evidence presented to make out the prima facie case of

FMLA retaliation/discrimination; rather, "in order to make this type of rebuttal showing, the plaintiff

. . . must, instead, introduce additional evidence of [unlawful] discrimination" or retaliation.

*Manzer*, 29 F.3d at 1084.

Allen does not claim that the City's proffered reasons for terminating him had no basis in

fact; on the contrary, he admits that he committed the August 2004 and September 10, 2006

misconduct, and that the misconduct violated two of the City's written General Orders governing

police officers.  Therefore, the first of the three avenues for showing pretext is unavailable to him.

Nor does Allen contend that his misconduct was not sufficient – in theory – to motivate the City's

decision to terminate.  Therefore, the third of the three avenues for showing pretext is unavailable

to him.

Allen must show a genuine issue as to pretext, then, under the second of the three avenues,

i.e., that his misconduct did not actually motivate his termination.[5]  Allen simply offers no evidence

that his repeated misconduct did not actually motivate his termination.  He does not allege, for

example, that anyone involved with the decision to terminate him had made a comment or otherwise

evinced an intent to minimize costs by terminating employees who took FMLA leave.  Nor does

Allen present evidence from which a reasonable factfinder could find that a police officer with a

record of repeating the same or meaningfully similar misconduct, who did not take FMLA leave,

was allowed to continue his employment with the City.

Allen did testify that before he was employed by the City, he had heard that his supervisor,

Sergeant Phillip Campbell, had crashed his patrol vehicle while intoxicated on duty but had not been

terminated as a consequence.  *See generally DeVries v. BioLife Plasma Servs., LP*, 2006 WL

2700902, *5 (W.D. Mich. Sept. 19, 2006) (Enslen, J.) (analyzing pretext in a FMLA case, court

remarked, "Usually insufficient motivation is shown by evidence that other employees were not

fired for substantially the same conduct.") (citing *Manzer*, 29 F.3d at 1084).  The City contends that

what someone allegedly told Allen out of court about his Sergeant is hearsay that would not be

admitted at trial and thus cannot be considered on summary judgment.  *See* MSJ at 16.

It is true that summary-judgment decisions must be made only on the basis of evidence that

would be admissible at trial.  *See Hendrickson v. Caruso*, 2008 WL 623788, *2 (W.D. Mich. Mar.

4, 2008) (Maloney, J.) ("[I]t is well established that hearsay evidence cannot be considered by a trial

---

[5]

*See, e.g., Slanaker v. AccessPoint Employment Alternatives, LLC*, 2008 WL 408519, *4-5 (E.D. Mich. Feb. 13, 2008) (defendant claimed that cash-flow problems would have caused it to layoff the FMLA plaintiff regardless of her maternity leave, but it was not entitled to summary judgment on the FMLA interference claim; plaintiff presented evidence that employer's cash-flow problems were routine and nothing new, and its claim of economic difficulty was exaggerated given that it had just opened a new location and spent $15,000 to hire an architect for a new floor plan).

court ruling on a motion for summary judgment.") (quoting *Tinsley v. GMC*, 227 F.3d 700, 703 (6th Cir. 2000) and citing *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006)).[6]

In any event, even assuming that the statement (that the Sergeant had crashed his patrol car while intoxicated) is not hearsay – or is admissible under an exception to the hearsay rule –[7] standing alone, the statement is of no avail to Allen. It was Allen's duty to discover and present evidence showing that the Sergeant in fact had a history of such infractions substantially similar to Allen's history, and showing that the Sergeant did not take FMLA leave. *Cf. Bertram v. Medina Cty.*, 2008

---

[6]

*See also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) ("Evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.");

*Davis v. MDOC*, 2008 WL 1820926, *2 (W.D. Mich. Apr. 4, 2008) (Bell, C.J.) (quoting *Tinsley*, 227 F.3d at 703).

*Salaam v. Lamphere*, 2008 WL 696453, *4 (W.D. Mich. Mar. 12, 2008) (Jonker, J.) ("'Hearsay evidence may not be considered on summary judgment.'") (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 126 F.3d 921, 927 (6th Cir. 1999));

Allen asserts that "for the purposes of a FRCP 56(c) determination, the hearsay must be able to be presented by a witness who has personal knowledge at trial[;] it does not have to be proven at the Motion determination," Opp'n at 8, but he cites no precedent in favor of this proposition.

[7]

*See, e.g., Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524-25 (6th Cir. 2007) (reversing summary judgment for employer on ADEA and MELCRA claims) (supervisor's statement that employee was "too old" to handle a certain account was not hearsay, because it was introduced to prove that it was said, not to prove that the employee was in fact too old to handle that account), *reh'g & reh'g en banc denied* (6th Cir. Feb. 7, 2008);

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (hearsay witness statements in an investigative report may be considered on summary judgment, *not to prove their truth*, but only to demonstrate state of mind and motive of the employer's managers in taking adverse employment actions against plaintiff) (following *Haughton v. Orchid Automation*, 206 F. App'x 524, 532 (6th Cir. 2006)), *cert. denied*, – U.S. – , – S.Ct. –, 2008 WL 695650 (2008) (No. 07-902).

WL 1696940, *5 n.8 (N.D. Ohio Apr. 9, 2008) ("Bertram also names a fellow co-worker who allegedly told her that he did not have to submit formal modified work assignment requests every thirty days.  Not only is the latter statement hearsay . . . , but the Plaintiff fails to provide any additional evidence on these points.  Thus, the Court cannot evaluate to what extent the plaintiff and these other male co-workers were similarly situated and treated differently."); *Fountain v. WellPoint, Inc.*, 2007 WL 2071910, *12 (S.D. Ohio July 17, 2007) ("Fountain points to no evidence demonstrating that WellPoint's concern about Fountain's performance problems was a pretext for [unlawful] discrimination or retaliation.  Fountain could have done so by showing that other employees similarly failed to meet deadlines, respond to emails and voicemails, and appear at scheduled meetings.  But there is simply no evidence of this.  As such, the Court finds that Fountain

-18-

has presented no evidence from which a jury could infer pretext.").[8] [9]

"This leaves Plaintiff with nothing more than proximity in time between the date [he] took FMLA leave and the adverse action[] at issue. 'But such temporal proximity is insufficient in and of itself to establish that the employer's [lawful] reason for discharging him was in fact pretextual.'" Arban, 345 F.3d at 403, *Madoffe v. Safelite Solutions, LLC*, 2008 WL 755182, *8 (S.D. Ohio Mar. 21, 2008) (granting summary judgment to employer on FMLA retaliation claim) (quoting *Skrjanc v. Great Lake Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)). *See also Zelnik v. CB Richard Ellis, Inc.*, 2005 WL 2211251, *5 (S.D. Ohio Sept. 9, 2005) ("This Court does not lightly grant

---

[8]

*Contrast McCarty v. Adrian Steel Co.*, 2006 WL 212036 (E.D. Mich. Jan. 27, 2006) (denying employer's motion for summary judgment on FMLA claim):

> Plaintiff argues that Defendant's proffered reason for terminating him was pretextual because . . . (5) Defendant did not terminate or reprimand Kenneth Palmer, another employee who failed to return to work by the demanded date and time. Plaintiff contends that Defendant perceived him to be a potential liability and wanted to restrict related medical costs to the company.

> * * * Plaintiff has at least raised an inference that he was terminated in violation of his FMLA rights. * * * Plaintiff suggests that the only occurrence between [Human Resources Director] Grof's assurance that he could return to work and his eventual termination was the conversation with Grof in which she asked him about his medical condition and expressed surprise that he would still be in need of kidney testing. This statement, taken with the previous statement by the Defendant's president that it wanted to get rid of those employees who would incur excessive medical costs for the company, and the close proximity in time to his FMLA leave, raise an inference that Defendant's proffered reason for terminating Plaintiff was pretextual.

*Id.* at *6.

[9]

Only the portion of Allen's testimony stating that the Sergeant was not terminated was not hearsay. Allen could testify to that fact from his personal knowledge (direct observation) that the Sergeant was still actively employed by the City as a police officer while Allen was employed there.

-19-

summary judgment against a plaintiff who was discharged immediately after returning from FMLA leave. In this case, however, the defendant has pointed to serious performance deficiencies wholly independent of the medical leave.").

Accordingly, Allen has not provided an evidentiary foundation for a finding that the City's stated reason for terminating him was a pretext (for FMLA-violative conduct) and that the City would not have terminated him if he had not taken FMLA leave.[10] *See Scott v. Metro. Health Corp.*,

_____

[10]

Allen asserts that *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469 (6th Cir. 2005) is "clearly on point." *Moorer*, however, is readily distinguishable. Moorer was terminated from his position as Administrator and Chief Financial Officer of two hospitals while he was on FMLA leave attending an alcoholism treatment/recovery program. Moorer's superior, Hill, claimed that his termination was based on several deficiencies she had found in Moorer's performance. The Sixth Circuit held that Moorer's FMLA claim survived summary judgment, explaining,

> The fact that Hill based Moorer's termination on these deficiencies, among others, but did not decide to effectuate the termination until Moorer took leave, could lead a fact finder to infer that Moorer would not have been fired absent his actual taking of leave. This fact, *combined with the fact that Moorer had called several of the termination reasons into question*, shows that there was sufficient evidence presented for the factfinder to conclude that Baptist denied Moorer his substantive right to reinstatement.

*Moorer*, 398 F.3d at 490 (emphasis added). Specifically, Hill testified that Moorer's termination was based, in part, on a written report from the state fire marshal purportedly stating that there was a fire hazard at one of the two hospitals for which Moorer had responsibility. *Id.* at 481. Defendant conceded at trial, however, that the fire marshal's office had searched and "was unable to find any record that such an inspection occurred." The only two written reports regarding fire safety indicate that the fire marshal conducted inspections *after* Moorer's termination. *Id.* at 481-82.

Second, Hill testified that Moorer's termination was based, in part, on her review of reports from inspections of one of Moorer's hospitals by the state health facilities commission. It turned out, however, that the commission did not inspect the facility until September 30, 2007, which was 12-13 days *after* Moorer's termination. *Id.* at 482. Third, Hill claimed Moorer's termination was based in part on an August 1997 letter from a Dr. Cannon. That letter, however, did not mention Moorer's name, and Dr. Cannon testified that it was not meant as criticism of Moorer's local administration of the facility, but was "directed at the system at large." *Id.* at 482. Dr. Cannon further testified that Hill never spoke to him about this letter prior to the date of Moorer's termination. *Id. See also Chester v. Quadco Rehab. Ctr.*, 484 F. Supp.2d 735, 740-42 (N.D. Ohio

234 F. App'x 341, 346-47 (6th Cir. 2007) (Griffin, J.) ("'[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), *cert. denied*, – U.S. –, 128 S.Ct. 1225 (2008).

Finally, an employee who requests FMLA leave has no greater protection against termination of his employment for reasons unrelated to his FMLA request, than he did before submitting that request. *See Arban*, 345 F.3d at 401 (citation omitted). As the regulations put it,

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not have otherwise been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. § 825.216(a); *see, e.g., Hollins v. Ohio Bell Tel. Co.*, 496 F. Supp.2d 864 (S.D. Ohio 2007) (granting summary judgment to employer on FMLA claim arising from November 17, 2001 termination; even if employer interfered with plaintiff's FMLA rights or discriminated against her

---

2007) (following *Moorer*) (denying employer's motion for summary judgment on FMLA claim; employer claimed it terminated plaintiff in 2004 as a necessary cost-cutting measure, but plaintiff presented evidence that of the six employees targeted for termination, only two were terminated and they were not the highest-paid employees, the particular operation where plaintiff worked was mostly profitable since 2001, employees received substantial raises in 2004 and 2005, and the supervisor threatened plaintiff with a bad evaluation if he applied to extend his FMLA leave).

Here, by contrast, Allen has not identified any such inconsistent or false statements that would logically call the stated reasons for his termination into question. That leaves Allen with only the temporal proximity of his FMLA leave and his termination, and *Moorer* does not suggest that a genuine issue is shown merely because the employer knew of an employee's performance deficiencies before he took FMLA leave but decided to terminate him only after he took the leave.

for exercising those rights, no FMLA violation occurred, because employer's written attendance policy permitted it to terminate her based solely on unexcused absences in August-October 2001 unrelated to the employee's FMLA activities).  Allen provides no authority for the proposition that the City was required to continue his employment after he committed what he himself admitted was serious misconduct that warranted substantial discipline, and which he admitted subjected him to termination before he ever requested the FMLA leave.[11] [12]  *See Throneberry*, 403 F.3d at 980 (it

---

[11]

*Cf. Washington v. Comcast Corp.*, – F. App'x –, –, 2008 WL 640003, *6 (6th Cir. 2008) (Griffin, J.) ("[E]ven if we were to find that Washington has established a prima facie case [of ERISA retaliation], she has not rebutted as pretextual Comcast's explanation for her termination. Comcast contends that Washington was terminated because of her unexcused absences from work, consistent with its policy.  This claim has a basis in fact, as Comcast's employee handbook provided that 'absence of three or more days without notice is considered job abandonment, and will be treated as a resignation from employment.'").

[12]

Allen merely expresses his opinion that termination was unnecessarily harsh and that the City should have exercised its discretion to impose lesser discipline.  But the FMLA does not authorize this court to second-guess the City's business judgment as to the amount of resources it should expend in accommodating Allen's problem and waiting for him to consistently follow the police department's General Orders (specifically 4.4 and 4.17, prohibiting conduct unbecoming a police officer and the off-duty consumption of alcohol to a degree that discredits the police department). *See McConnell v. Swifty Transp., Inc.* 198 F. App'x 438, 443 (6th Cir. 2006) (Siler, McKeague, Griffin) (affirming summary judgment for employer on FMLA interference and retaliation claims, and remarking, "Importantly, we must not second guess the business judgment of the employer, but simply evaluate 'whether the employer gave an honest explanation of its behavior.'") (quoting *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)).

*See also Fountain v. WellPoint, Inc.*, 2007 WL 2071910 (S.D. Ohio July 17, 2007), where the district court granted summary judgment to the employer on an FMLA claim:

> Fountain . . . admitted to many of the alleged performance problems.  Nonetheless, Fountain claims he did not perceive the problems to warrant termination.  Fountain attempts to excuse these problems by citing his difficulty with using company software and claims Pickett should have given him more time to adjust.  However, *the fact that Fountain believes WellPoint should have* excused his failure to meet deadlines and *given him another chance* to meet his performance goals *is irrelevant.*

-22-

"would be a senseless proposition" to require an employer to retain an employee until his FMLA leave ends, if the employee had committed dischargeable misconduct before or during the FMLA leave). The City's decision not to terminate Allen before he went on FMLA leave cannot be held against it so as to help Allen create a genuine issue as to pretext. The City had the right to give Allen reprieves, and the fact that he went on FMLA leave did not trigger any obligation for the City to continue exercising such forbearance.

If anything, the fact that the City had given Allen reprieves following his August 2004 drunk driving and his September 10, 2006 drunken tirade against a 911 dispatcher, Three Rivers police, and hospital personnel, strongly suggests that its stated reason for finally firing him was not a pretext. *See Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 632 (6th Cir. 2008) ("Staunch knew that her employment would be terminated if she incurred one more infraction during the 18-month period in which her Termination Warning was in effect. Despite this, Staunch incurred another SK [sick leave] incident . . . without providing a doctor's note. *The fact that Continental chose to give Staunch a final reprieve is strong evidence that its final decision to terminate her employment* for flying with a non-compliant safety manual . . . *was not a pretext* for pregnancy discrimination.") (emphasis added).

### Discussion: Count 2, Michigan Persons with Disabilities Civil Rights Act

Count two claims that the City violated Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), M.C.L. § 37.1101 *et seq.* Specifically, count two alleges that Allen had completed cyber-crime training which he could have performed if he had not been terminated; the City proposed a referral question that nobody with Allen's disability could meet; and the City viewed

---

*Id.* at *12 (emphasis added).

Allen as disabled and unable to perform any job, with or without accommodations.  Comp. ¶¶ 24-30; *see also* Allen's Opp'n at 9-12.

Having disposed of Allen's federal claim, the court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the claims which arise under state law.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) "[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.") (citing 28 U.S.C. § 1367(c)(3) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.")), *cert. denied*, – U.S. –, 127 S.Ct. 1832 (2007); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . .").

The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own State's law in the first instance.  *See Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6th Cir. 2005) ("We hold that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law issues based on its consideration of the interests of justice and comity best served by a state court's resolution of the remaining state law claims."); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (noting that only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial").  *See, e.g., Boshaw v. Spartan Stores, Inc.*, 2005 WL 3277986 (W.D. Mich. Dec. 2, 2005) (Enslen, J.) (granting defendant-employer's motion for summary judgment on FMLA,

-24-

ADA, and FLSA claims, and declining supplemental jurisdiction over Michigan-law claims).[13]

## ORDER

Having reviewed the complaint, the answer, the defendant's opening brief in support of summary judgment, the plaintiff's opposition brief, and the defendant's reply brief, the court **GRANTS in part and DENIES WITHOUT PREJUDICE in part** the defendant's motion for summary judgment [# 15].

Count one, the FMLA claim, is **DISMISSED with prejudice.**

Count two, the MPDCRA claim, is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

This is a final and appealable order.

**IT IS SO ORDERED this 5th day of June, 2008.**

---

[13]

*See, e.g.,* exercising 28 U.S.C. § 1376(c)(3) discretion, outside the FMLA context, to decline supplemental over state-law claims and dismiss those claims without prejudice:

*Westberg v. Russell*, 2008 WL 205208, *1 (W.D. Mich. Jan. 23, 2008) (Enslen, J.);
*Poindexter v. McKee*, 444 F. Supp.2d 783 (W.D. Mich. 2006) (Miles, J.);
*Glover v. Elliott*, 2007 WL 4557853, *5 (W.D. Mich. Dec. 21, 2007) (Bell, C.J.) ("In light of the entry of summary judgment on Plaintiff's federal claims at an early stage . . . , the Court finds no good reason to exercise supplemental jurisdiction over Plaintiff's state law claims.");

*Forner v. Robinson Tp. Bd.*, 2007 WL 2284251, *8 (W.D. Mich. Aug. 7, 2007) (Quist, J.);

*Reinhardt v. Dennis*, 399 F. Supp.2d 803, 811 (W.D. Mich. 2005) (McKeague, J.);

*Claspell v. Denso Mfg. Mich., Inc.*, 1998 WL 480875, *9 (W.D. Mich. June 26, 1998) (Quist, J.) (after granting summary judgment to defendant-employer on ADA claims, court stated, "Although discovery has been completed and the case has progressed substantially, the Court finds no compelling reason to deviate from the general rule by retaining jurisdiction over Claspell's state law claims."), *judgment aff'd*, 194 F.3d 1311, 1999 WL 777700 (6th Cir. Sept. 13, 1999).

/s/ Paul L. Maloney
Honorable Paul L. Maloney
United States District Judge